## UNITED STATES COURT OF APPEALS
## FOR THE EIGHTH CIRCUIT

DERRICK JONES, et al.,
Plaintiffs – Appellees,
v.
City of St. Louis, et al.,
Defendants – Appellants.

Appeal from the United States District Court
Eastern District of Missouri, Eastern Division
Hon. Henry Autrey, United States District Judge

BRIEF OF APPELLANTS
City of St. Louis, Direll Alexander, Bruce Borders, Javan Fowlkes, Douglas Jones,
Sherry Richard, Aisha Turner, and Freddie Wills

SHEENA HAMILTON,
CITY COUNSELOR

By: Abby Duncan, #67766MO
1200 Market Street
City Hall, Room 314
St. Louis, Missouri 63103
Phone: 314-622-3361
Fax: 314-622-4956
DuncanA@stlouis-mo.gov

## SUMMARY OF THE CASE AND STATEMENT ON ORAL ARGUMENT

In this action, Plaintiffs bring an assortment of claims against various correctional officers and City for events that occurred while Plaintiffs were pre-trial detainees at City's maximum-security jail. Plaintiffs bring 42 U.S.C. § 1983 claims against individual officers and City, alleging they suffered unconstitutional use of OC spray, App. 000050; R. Doc. 131, Counts I-IV, and endured unconstitutional conditions in the form of water shut offs, App. 000050; R. Doc. 131, Count IX. Additionally, two of the four Plaintiffs bring a claim against City under the Americans with Disabilities Act (ADA), arguing the ADA entitles them to a use-of-force accommodation. App. 000050; R. Doc. 131, Counts VI, VIII, X.

The district court denied the individual defendants qualified immunity but failed to conduct an individualized analysis of each defendant-officer's conduct. Moreover, the district court erred in denying qualified immunity to the individual officers where they did not violate Plaintiffs' clearly established rights. Finally, the district court erred in denying summary judgment to City since the claims against it are inextricably intertwined with the qualified immunity analysis, and Plaintiffs have otherwise failed to demonstrate City's liability under *Monell* or the ADA.

Appellants request fifteen minutes for argument.

# TABLE OF CONTENTS

SUMMARY OF THE CASE AND STATEMENT ON ORAL ARGUMENT ...... iii

TABLE OF CONTENTS ......................................................................... iiii

TABLE OF AUTHORITIES .................................................................... v

JURISDICTIONAL STATEMENT ........................................................ 1

STATEMENT OF THE ISSUES ............................................................. 2

STATEMENT OF THE CASE ................................................................ 3

SUMMARY OF THE ARGUMENT ....................................................... 9

ARGUMENT ........................................................................................ 11

    I.     THE DISTRICT COURT ERRED IN DENYING QUALIFIED IMMUNITY TO DEFENDANT-OFFICERS WHERE THE COURT FAILED TO CONDUCT AN INDIVIDUALIZED ANALYSIS OF EACH OFFICER'S CONDUCT…………………………………………………...11

    II.    THE DISTRICT COURT ERRED IN DENYING DEFENDANTS QUALIFIED IMMUNITY TO DEFENDANTS FOWLKES, JONES, RICHARD, TURNER, AND WILLS…..……………………………………….15

    III.    THE DISTRICT COURT ERRED IN DENYING CITY'S MOTION FOR SUMMARY JUDGMENT WHERE THE 1983 AND ADA CLAIMS

ARE INEXTRICABLY INTERTWINED WITH THE QUALIFIED

IMMUNITY ANALYSIS…………………...…………………………...37

CONCLUSION .................................................................................................4646

CERTIFICATE OF COMPLIANCE WITH RULE 32(a) ......................................47

CERTIFICATE OF SERVICE ...............................................................................47

## TABLE OF AUTHORITIES

**Cases**                                                                         **Page**

*Anderson v. Creighton,* 483 U.S. 635 (1987)……………………………………..15

*Andrews v. Fowler*, 98 F.3d 1069 (8th Cir. 1996)………………………………...44

*Ashcroft v. al-Kidd*, 563 U.S. 731 (2011)…………………………………………11

*Ashcroft v. Iqbal,* 556 U.S. 662 (2009)……………………………………………16

*Barnes v. Gorman*, 536 U.S. 181 (2002)…………………………………………38

*Bd. of Cnty. Com'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397 (1997)………..41

*Behrens v. Pelletier*, 516 U.S. 299 (1996)…………………………………………1

*Bell v. Wolfish,* 441 U.S. 520 (1979)……………………………………………...34

*Berryhill v. Schriro,* 137 F.3d 1073, 1076-77 (8th Cir. 1998)……………………25

*Burns v. Eaton*, 752 F.3d 1136 (8th Cir. 2014)……………………2, 10, 17, 28, 29

*Butler v. Fletcher,* 465 F.3d 340 (8th Cir. 2006)…………………………………17

*Cannon v. Univ. of Chi*., 441 U.S. 677 (1979)……………………………..37, 38

*Carpenters' Pension Fund of Illinois v. Neidorff,* 30 F.4th 777 (8th Cir. 2022)….45

*Casey v. Cooper*, 4:23 CV 206 JMB, 2024 WL 1856176 (E.D. Mo. Apr. 29, 2024)………………………………………………………………………38

*City of Canton v. Harris*, 489 U.S. 378 (1989)…………………………………...41

*Clemmons v. Armontrout*, 477 F.3d 962 (8th Cir. 2007)…………………………16

*Conrod v. Davis*, 120 F.3d 92 (8th Cir. 1997)……………………………………15

*Crawford v. Van Buren County, Ark.*, 678 F.3d 666 (8th Cir. 2012)……………..41

*Ellis v. Norris,* 179 F.3d 1078 (8th Cir. 1999)……………………………………16

*Evenstad v. Cty. of Hennepin*, No. 04-1124 (JMR/FLN), 2006 U.S. Dist. LEXIS 104666 (D. Minn. May 19, 2006)……………………………………………45

*Gebser v. Lago Vista Indep. Sch. Dist.,* 524 U.S. 274 (1989)……………………38

*Gregory v. Rogers*, 974 F.2d 1006 (8th Cir. 1992)………………………………..35

*Guardians Ass'n v. Civil Serv. Comm'n of the City of New York*, 463 U.S. 582 (1983)…………………………………………………………………...38

*Gustafson v. Cornelius Co.*, 724 F.2d 75 (8th Cir. 1983)…………………………45

*Hampton v. City of St. Louis*, 4:20 CV 966 CDP, 2022 WL 2643507 (E.D. Mo. July 8, 2022), aff'd, 22-3017, 2023 WL 8613842 (8th Cir. Dec. 13, 2023)………19

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982)………………………………………...2

*Hooper v. City of St. Paul*, 17-CV-3442 (PJS/DTS), 2019 WL 4015443 (D. Minn. Aug. 26, 2019)…………………………………………………………………39

*Hope v. Pelzer*, 536 U.S. 730 (2002)………………………………………………...11

*Hudson v. McMillian*, 503 U.S. 1 (1992)…………………………………………25

*Ingram v. Kubik*, 30 F.4th (11th Cir. 2022)…………………………………………38

*Irving v. Dormire*, 519 F.3d 441 (8th Cir. 2008)…………………………………43

*Jackson v. Gutzmer*, 866 F.3d 969 (8th Cir. 2017)………………………………..43

*Jacobson v. McCormick*, 763 F.3d 914 (8th Cir. 2014)…………………………..30

*Jane Doe "A" v. Special School Dist.,* 901 F.2d 642 (8th Cir. 1990)……………42

*Johnson v. Douglas Cty. Med. Dep't*, 725 F.3d 825 (8th Cir. 2013)……………...42

*Jones v. City of Detroit*, 20 F.4th 1117 (6th Cir. 2021)…………………………...38

*Jones v. Shields*, 207 F.3d 491 (8th Cir. 2000)…………………………2, 21, 26, 30

*Kahle v. Leonard,* 477 F.3d 544, 549 (8th Cir. 2007)………………………...12, 16

*Kulkay v. Roy*, 847 F.3d 637 (8th Cir. 2017)……………………………………...43

*Kutrip v. City of St. Louis*, 329 Fed. Appx. 683 (8th Cir. 2009)…………………40

*Laney v. City of St. Louis, Missouri*, 56 F.4th 1153 (8th Cir. 2023)……………...22

*Mahdi v. Bush*, 4:19-CV-00183-SRC, 2019 WL 6020907 (E.D. Mo. Nov. 14, 2019)………………………………………………………………………………45

*Malley v. Briggs*, 475 U.S. 335 (1986)……………………………………………15

*Malone v. Kahle,* 552 U.S. 826 (2007)……………………………………………12

*McConney v. City of Houston*, 863 F.2d 1180 (5th Cir.1989)……………………44

*McManemy v. Tierney,* 970 F.3d 1034 (8th Cir. 2020)…………………………...31

*Meagley v. City of Little Rock*, 639 F.3d 384 (8th Cir. 2011)……………………39

*Mitchell v. Forsyth,* 472 U.S. 511 (1985)………………………………………..12, 16

*Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978)……………………………42

*Muir v. Decatur Cty.*, 917 F.3d 1050 (8th Cir. 2019)……………………...1, 2, 3, 37

*Owens v. Scott County Jail*, 328 F.3d 1026 (8th Cir.2003)………………………16

*Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206 (1998)………………………………40

*Parrish v. Ball*, 594 F.3d 993 (8th Cir. 2010)……………………………………16

*Payne v. Britten*, 749 F.3d 697 (8th Cir. 2014)…………………………………...12

*Pearson v. Callahan*, 555 U.S. 223 (2009)…………………………………...15, 32

*Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986)……………………………..41

*Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838 (5th Cir. 2009)……………...44

*Robbins v. Becker*, 715 F.3d 691 (8th Cir. 2013)……………………………2, 9, 14

*Roberts v. City of Omaha*, 723 F.3d 966 (8th Cir. 2013)……..1, 2, 3, 12, 13, 37, 40

*Santiago v. Blair*, 707 F.3d 984 (8th Cir. 2013)…………………………………..17

*Scott v. Harris*, 550 U.S. 372 (2007)…………………………………………12, 31

*S.M. v. Krigbaum*, 808 F.3d 335 (8th Cir. 2015)…………..9, 12, 13, 16, 23, 26, 32

*Smith v. Conway Cty., Ark.*, 759 F.3d 853 (8th Cir. 2014)……………………….17

*Smith v. Copeland*, 87 F.3d 265 (8th Cir. 1996)……………………………34, 36

*Soltesz v. Rushmore Plaza Civic Ctr.*, 847 F.3d 941 (8th Cir. 2017)…………….41

*Soto v. Dickey*, 744 F.2d 1260 (7th Cir. 1984)…………………………….22, 25

*Strauss v. City of Chicago*, 760 F.2d 765 (7th Cir. 1985)……………………...45

*Swain v. Junior*, 961 F.3d 1276 (11th Cir. 2020)…………………………………33

*Turner v. Safley*, 482 U.S. 78 (1987)………………………………………...27

*Vandevender v. Sass*, 970 F.3d 972 (8th Cir. 2020)………………………...27, 43

*Walton v. Dawson*, 752 F.3d 1109 (8th Cir. 2014)…………………………9, 13, 14

*Ward v. Smith*, 844 F.3d 717 (8th Cir. 2016)……………………………9, 17, 43

*Ware v. Jackson County, Mo.*, 150 F.3d 873 (8th Cir. 1998)…………………….41

*White v. Pauly*, 137 S. Ct. 548 (2017)………………………………………11

*Whitley v. Albers*, 475 U.S. 312 (1986)…………………………………………17, 25

*Williams v. Delo*, 49 F.3d 442 (8th Cir. 1995)……………………………………35

*Wilson v. Northcutt*, 441 F.3d 586 (8th Cir. 2006)………………………………..16

*Wilson v. Williams*, 961 F.3d 829 (6th Cir. 2020)………………………………...20

*Zean v. Fairview Health Servs.*, 858 F.3d 520 (8th Cir. 2017)…………………...45

**Rules**

Fed. R. Civ. P. 56.……………………………………………………………………11

# JURISDICTIONAL STATEMENT

The United States District Court for the Eastern District of Missouri had original federal question jurisdiction over the underlying case, *Derrick Jones, et al. v. City of St. Louis, et al.*, cause no. 4:21-CV-600-HEA, pursuant to 28 U.S.C. § 1331 because the allegations of the case implicated 42 U.S.C. § 1983 and 42 U.S.C.A. § 12132. The district court entered its order in the underlying case on March 31, 2024, denying qualified immunity to all defendant officers. App. 006079; R. Doc 383. Defendants timely filed their Notice of Appeal on April 30, 2024. App. at 006093; R. Doc. 384. This Court has jurisdiction of the instant appeal by reason of 28 U.S.C. §1291, as pretrial orders denying qualified immunity generally fall within the collateral order doctrine. *Behrens v. Pelletier*, 516 U.S. 299 (1996). This Court also has jurisdiction over Plaintiff's pendant §1983 claim for municipal liability and the ADA because its resolution is inextricably intertwined with the qualified immunity analysis. *Muir v. Decatur Cty*., 917 F.3d 1050, 1053 (8th Cir. 2019); *Roberts v. City of Omaha*, 723 F.3d 966, 976 (8th Cir. 2013).

# STATEMENT OF THE ISSUES

I.    Whether the district court, in considering the Defendant-officers' qualified immunity defense, erred in failing to conduct an individualized analysis of each officer's conduct?

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982)

*Robbins v. Becker*, 715 F.3d 691 (8th Cir. 2013)

II.    Whether the district court erred in denying qualified immunity to Defendants Fowlkes, Jones, Richard, Turner, and Wills?

*Burns v. Eaton*, 752 F.3d 1136 (8th Cir. 2014)

*Jones v. Shields*, 207 F.3d 491 (8th Cir. 2000)

III.    Whether the district court erred in denying City's motion for summary judgment where the ADA and § 1983 claims are inextricably intertwined with the qualified immunity analysis, and Plaintiffs have otherwise failed to implicate City's liability on either claim?

*Muir v. Decatur Cty.*, 917 F.3d 1050 (8th Cir. 2019)

*Roberts v. City of Omaha*, 723 F.3d 966 (8th Cir. 2013)

## STATEMENT OF THE CASE

Appellants Direll Alexander, Bruce Borders, Javan Fowlkes (Fowles), Douglas Jones (Officer Jones), Sherry Richard (Richard), Aisha Turner (Turner), and Freddie Wills (Wills) appeal as of right from an order rendered by the Honorable Henry Autrey in a civil case before the U.S. District Court of the Eastern District of Missouri, cause no. 4:21-cv-600, denying them qualified immunity on Plaintiffs' claims of excessive force and unconstitutional conditions. App. 006079; R. Doc 383. City appeals from the same order denying its motion for summary judgment on Plaintiff's claims under § 1983 and the ADA for municipal liability in that determination of the City's claims are inextricably intertwined with the individual Defendants' entitlement to qualified immunity and a properly conducted qualified immunity analysis will necessarily resolve Plaintiff's claims against City. *Muir v. Decatur Cty.*, 917 F.3d 1050, 1053 (8th Cir. 2019); *Roberts v. City of Omaha*, 723 F.3d 966, 976 (8th Cir. 2013).

At all times relevant herein, Plaintiffs were pretrial detainees housed at City's maximum-security facility, the City Justice Center (CJC). Plaintiffs' excessive force claims center on the Defendants' use of pepper spray in varying circumstances. Plaintiff Derrick Jones (Derrick),[1] for example, was pepper sprayed by Defendants

---

[1] Because Plaintiffs Derrick Jones and Jerome Jones have the same last name, they are referred to herein by their first names for purposes of clarity.

Richard and Fowlkes on December 14, 2020 when, during the national COVID-19 lockdown, corrections staff instructed Derrick into his cell after he was exposed to a detainee exhibiting COVID symptoms, and yet Derrick persistently refused orders to move from the common area, where other detainees were, to his cell. App. 000117-119, 000127; R. Doc. 316, at 2-4, R. Doc. 316-1, at 3. After repeatedly thwarting Richard's orders, Richard dispersed a short burst of pepper spray to Derrick, at which point Derrick attacked Richard. App. 000117-118; R. Doc. 316, at 1-2. It took multiple officers to subdue Derrick, including Fowlkes, who sprayed Derrick while he struggled with officers on the ground. App. 000118; R. 316, at 2. Thereafter, Derrick was taken to the medical unit and placed in a holding cell where he began violently kicking and throwing his body against the cell door. App. 000119-120, 000359; R. Doc. 316, at 3-4, R. Doc. 342-1, at 10. Fowlkes ordered Derrick to stop, he refused, so Fowlkes sprayed Derrick again. Once Derrick was calm, he received medical attention. App. 000119-120; R. Doc. 316, at 3-4.

On December 19, 2020, correctional officers Turner and Michelle Lewis (Lewis), both female, were the only correctional officers in a male-only unit where detainees were moving about freely when Plaintiff Darnell Rusan (Rusan) overheard Turner's conversation with Lewis and became increasingly aggressive. App. 000120-121, 000158; R. Doc. 316, at 4-5 & 316-13. Rusan threatened Turner with physical violence, so Turner ordered Rusan to step into his cell. App. 000121, R.

Doc. 316, at 5. Rusan refused. App. 000121, R. Doc. 316, at 5. Turner dispersed a short burst of pepper spray to Rusan. App. 000158; R. Doc. 316-13. Rusan then attacked Turner and Lewis by throwing chairs at them and shoving Lewis to the ground. App. 000158; R. Doc. 316-13. Several months later, on February 3, 2021, Rusan was pepper sprayed by Fowlkes after Rusan repeatedly refused to submit to a lawful strip search. App. 000121122; R. Doc. 316, at 5-6.

In February 2021, the Justice Center experienced violent riots over several days, wherein detainees escaped their cells, started fires, broke windows, flooded their cells, and assaulted correctional officers. App. 000147-151; R. Doc. 316-10, at 1-5. Around that time, on February 9, 2021, Jerome was directed two or three times to move from a one-man cell to a two-man cell, but he refused. App. 000552; R. Doc. 343-3, at 6. Jerome was taken down to the visiting booth, where Fowlkes again asked him whether he would comply with orders to move cells. *Id.* Jerome knows that detainees who refuse directives may be maced, yet he refused orders, and began arguing with Fowlkes about why he needed to move. *Id.* Fowlkes sprayed Jerome, and Jerome immediately complied with orders thereafter. *Id.*

Plaintiff Marrell Withers (Withers) was pepper sprayed on January 6, 2022, where he, while handcuffed, was moving freely about a housing unit as he refused orders to go into a cell when medical staff believed Withers was positive for COVID. App. 000122-23, 000164; R. Doc. 316, at 6-7 & 316-16. Captain Wills and Officer

Jones were called to the unit after Withers continued to argue with other correctional officers and threatened to kick a computer monitor. App. 000122; R. Doc. 316, at 6. Once Wills and Officer Jones arrived to the unit, Wills again instructed Withers into a cell, but Withers refused and said, "spray me…go ahead spray me." App. 000164; R. Doc. 316-16. Officer Jones applied one short burst of pepper spray to Withers. *Id.* Withers continued to tell the officers that he would not go into the cell, so Officer Jones dispersed another short burst of pepper spray to Withers. *Id.* Withers was then taken to the medical unit for treatment. *Id.*

In addition to their force claims, Plaintiffs Derrick and Jerome bring claims against Fowlkes for unlawful conditions; they assert that Fowlkes subjected them to punitive water shut offs. Yet there is no evidence in the record that Fowlkes was directly involved in any water shut off, let alone any water shut off that affected Plaintiffs, nor is there any evidence in the record that the water was shut off punitively.

Finally, Plaintiffs claim City is vicariously liable for the use of force against them, that City's employees committed wrongful force for which the City must be held liable. In addition, Plaintiffs point to a multitude of use of force reports involving OC spray by corrections officers over the last ten years at the CJC under wildly varying circumstances, but admit that the force was deemed justified in all but nine of those incidents. App. 000330; R. Doc. 342, at 76. Plaintiffs Rusan and

Withers, who allegedly have epilepsy and asthma respectively, bring an additional claim against City for the alleged failure of City officers to accommodate their disabilities under the ADA in use of force situations, despite no authority that such is required.

District Court Order

The District Court denied qualified immunity to the individual Defendants. In analyzing no incident or defendant in particular, the Court held that "a fact finder could conclude that Defendants' use of force was objectively unreasonable," App. 006087; R. Doc. 383, at 9, and that "Plaintiffs present evidence that the amount of mace was excessive, that Plaintiffs were not in positions to harm the officers, plaintiffs were left with mace-soaked clothes, plaintiffs were not allowed to shower or rinse their eyes, [and] no action was taken to assist the Plaintiffs when they told the officers they needed help." App. 006087-088; R. Doc. 383, at 9-10. The Order is entirely silent as to any finding with respect to Plaintiffs' claim against Fowlkes for water shut offs.

The Order is also vague with respect to its holding against City. The District Court found, without specific references to the record, that "Plaintiffs have presented evidence of the use of large amounts of mace being sprayed on compliant plaintiffs and instances of water being shut off for long periods of time." App. 006090-091; R. Doc. 383, at 12-13. As to Plaintiffs' ADA claims, the lower court found that

Plaintiffs' "claim they asked for accommodations in advising Defendants of their medical condition before being sprayed" was sufficient to prohibit summary judgment to City, App. 006091; R. Doc. 383, at 19, despite the Court's failure to first analyze whether it is clearly established the ADA even applies to use of force situations in maximum-security facilities.

This appeal follows.[2] App. 6093; R. Doc. 384.

---

[2] In a previously issued order, the Court dismissed Plaintiffs' class action claims. R. Doc. 381.

## SUMMARY OF THE ARGUMENT

The law is clear that qualified immunity demands an individualized analysis of each defendant-officer's conduct because government officials are personally liable only for their own misconduct under § 1983. *S.M. v. Krigbaum*, 808 F.3d 335, 340 (8th Cir. 2015). The District Court failed to conduct an individualized analysis of each defendant officer, instead opting to paint the officers' conduct with a broad brush. *See* App. 006079; R. Doc. 383. Where, as here, a District Court has failed to conduct an individualized analysis, this Court may elect to remand for additional clarity or conduct the qualified immunity analysis itself. *See e.g.*, *Robbins v. Becker*, 715 F.3d 691, 694 (8th Cir. 2013) (remanding back to district court for "more detailed explanation and consideration" where the lower court failed to conduct thorough determination of the officer's qualified immunity defense); *Walton v. Dawson*, 752 F.3d 1109, 1125-126 (8th Cir. 2014) (reversing lower court's denial of qualified immunity to Sheriff where District Court failed to conduct a substantive individualized analysis of the Sheriff's conduct).

If this Court elects to conduct the qualified immunity analysis itself, it should grant qualified immunity to Defendants. Because use of force is sometimes required in prison settings, guards are liable only if they are completely unjustified in using force, i.e., they are using it maliciously and sadistically. *Ward v. Smith*, 844 F.3d 717, 721 (8th Cir. 2016). "[W]hen an official's intent is an element of the § 1983

claim, as it is in Eighth Amendment excessive force claims, and [ ] the official has made a properly supported motion for summary judgment based on qualified immunity, the plaintiff must identify affirmative evidence from which a jury could find that the plaintiff has carried his or her burden of proving the pertinent motive." *Burns v. Eaton,* 752 F.3d 1136, 1139 (8th Cir. 2014). Here, Plaintiff cannot carry their burden of proving that each officer maliciously and sadistically used force against Plaintiffs, and Plaintiffs cannot otherwise show that Defendants violated Plaintiffs' clearly established rights. Additionally, Fowlkes is entitled to qualified immunity on Plaintiffs' claims of unlawful conditions where Plaintiffs have failed to show that Fowlkes was personally involved in the water shut offs that Plaintiffs allegedly experienced.

Lastly, the claims against City should be dismissed where the claims against it are inextricably intertwined with the qualified immunity issue. And even if personal liability against a defendant officer survives, Plaintiffs fail to produce evidence sufficient to establish that City had an unconstitutional policy or custom that was the moving force behind Plaintiffs' injuries, or that City violated clearly established law under the ADA.

## **ARGUMENT**

## **STANDARD OF REVIEW**

Review of a denial of a motion for summary judgment premised on the defense of qualified immunity is essentially *de novo*, and the record is viewed in the light most favorable to the plaintiff. The court considers only facts knowable to the defendant, and the plaintiff is obliged to establish both a violation of clearly established constitutional law and that the violative nature of the defendant's conduct would have been clear to every reasonable officer at the time. *White v. Pauly*, 137 S. Ct. 548, 550, (2017); *Ashcroft v. al-Kidd*, 563 U.S. 731 (2011); Fed. R. Civ. P. 56.

**I.    THE DISTRICT COURT ERRED IN DENYING QUALIFIED IMMUNITY TO THE DEFENDANT-OFFICERS WHERE THE COURT FAILED TO CONDUCT AN INDIVIDUALIZED ANALYSIS OF EACH OFFICER'S CONDUCT.**

The defendants, correctional officers who staff City's high security jail, are entitled to qualified immunity as a matter of law if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow*, 457 U.S. at 818. "Qualified immunity operates to ensure that before they are subjected to suit, officers are on notice their conduct is unlawful." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002).

"Ordinarily, [the Eighth Circuit Court of Appeals] lacks jurisdiction to review denials of motions to dismiss and motions for summary judgment because neither is

a final decision." *Payne v. Britten*, 749 F.3d 697, 700 (8th Cir. 2014). However, when a district court denies a defendant summary judgment based on qualified immunity, "the defendant may immediately appeal the 'purely legal' issue of 'whether the facts ... support a claim of violation of clearly established law.'" *S.M.*, 808 F.3d at 339–40, citing *Kahle v. Leonard,* 477 F.3d 544, 549 (8th Cir. 2017), *Malone v. Kahle,* 552 U.S. 826 (2007), quoting *Mitchell v. Forsyth,* 472 U.S. 511, 528 n. 9 (1985). "[O]therwise, [the denial of qualified immunity] would be effectively unreviewable," *Roberts*, 723 F.3d at 972, as "[q]ualified immunity is an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Payne*, 749 F.3d at 700, quoting *Scott v. Harris*, 550 U.S. 372, 376 n.2, (2007).

In the District Court, seven individual defendants sought and were denied summary judgment on the issue of qualified immunity. App. 006079; R. Doc. 383. Their motion invoked qualified immunity as concern the eight incidents of alleged unconstitutional force asserted by four Plaintiffs under varying circumstances on five different dates, as well as allegations against Defendant Fowlkes for unidentified dates where their water was temporarily shut off. On appeal, the individual defendants seek review and reversal of the District Court's denial of summary judgment.

As explained in detail below, the District Court's analysis and, hence, its order denying qualified immunity is fatally flawed. Inexplicably, it utterly overlooks an element indispensable to constitutional tort liability and essential to judicial evaluation of eligibility for immunity – namely, that "[g]overnment officials are personally liable only for their own misconduct." *S.M.*, 808 F.3d at 340. Therefore, "the assessment of qualified immunity requires an individualized analysis of each defendant-officer's conduct." *Id.*; *Walton*, 752 F.3d at 1125; *Roberts,* 723 F.3d at 974.

Here, the District Court utterly failed to conduct an individualized analysis of each defendant officer's conduct. The lower court failed to analyze any of the Defendants individually, and referenced no specific incident of force. *See* App. 006085-089; R. Doc. 383, at 7-11. Instead, the court's order paints Defendants with a broad brush by finding that "a fact finder could conclude that Defendants' use of force was objectively unreasonable," App. 006087; R. Doc. 383, at 9, and that "Plaintiffs present evidence that the amount of mace was excessive, that Plaintiffs were not in positions to harm the officers, plaintiffs were left with mace-soaked clothes, plaintiffs were not allowed to shower or rinse their eyes, [and] no action was taken to assist the Plaintiffs when they told the officers they needed help." App. 006087-088; R. Doc. 383, at 9-10.

Yet, the Order points to no defendant officer by name and analyzes no incident of alleged unconstitutional conduct. The Order fails to analyze, for example, what amount of mace used by whom was excessive, what Plaintiffs were not in positions to harm which officers, which Plaintiffs were left with mace-soaked clothes, which Defendants soaked plaintiffs' clothes with mace, and the circumstances of any particular macing. Such analysis is utterly insufficient under well-established qualified immunity law, and fails to put the Defendants on notice of what conduct, by whom, potentially violated the clearly established rights of which Plaintiffs. *Hope*, 536 U.S. at 739. With regard to Plaintiffs' claim against Fowlkes for unlawful conditions related water shut offs, the Order is entirely silent, failing to provide any commentary at all, despite the undisputed evidence that Plaintiffs cannot directly attribute the water shut offs they allegedly experienced to anyone in particular, let alone Fowlkes. *See* App. 006085-089; R. Doc. 383, at 7-11.

When a District Court fails to conduct an individualized analysis of each defendant officer's conduct, as required by law, the Eighth Circuit Court of Appeals either remands to the District Court for further analysis or conducts the individualized analysis itself. *See e.g.*, *Robbins*, 715 F.3d at 694 (remanding back to district court for "more detailed explanation and consideration" where the lower court failed to conduct thorough determination of the officer's qualified immunity defense); *Walton,* 752 F.3d at 1125-126 (reversing lower court's denial of qualified

immunity to Sheriff where District Court failed to conduct a substantive individualized analysis of the Sheriff's conduct).

In this case, the bases for the Order are so feeble and flawed, this Court should reverse the District Court's denial of summary judgment and outright grant the defendants the qualified immunity to which they are entitled.

## II. THE DISTRICT COURT ERRED IN DENYING QUALIFIED IMMUNITY TO DEFENDANTS FOWLKES, JONES, RICHARD, TURNER, AND WILLS.

The doctrine of qualified immunity shields government officials from civil liability so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow*, 457 U.S. at 818. A government official is entitled to qualified immunity unless (1) he violated a plaintiff's constitutional right and (2) that right was clearly established at the time of the violation. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009).

Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). "Once a defense of qualified immunity is raised, a plaintiff must offer 'particularized' allegations of unconstitutional or illegal conduct." *Conrod v. Davis*, 120 F.3d 92, 95 (8th Cir. 1997), citing *Anderson v. Creighton*, 483 U.S. 635, 639–40 (1987). Qualified immunity is both a defense to liability and a limited "entitlement not to

stand trial or face the other burdens of litigation." *Ashcroft v. Iqbal*, 556 U.S. 662, 672 (2009), quoting *Mitchell*, 472 U.S. at 526.

"Liability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights." *Clemmons v. Armontrout*, 477 F.3d 962, 967 (8th Cir. 2007); *see also Ellis v. Norris*, 179 F.3d 1078, 1079 (8th Cir. 1999) (noting that plaintiff pursuing claims under § 1983 must "allege facts supporting any individual defendant's personal involvement or responsibility for the violations") (citations omitted). The doctrine of vicarious liability is inapplicable in § 1983 suits. *See Parrish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010), citing *Iqbal*, 556 U.S. 662. "Liability for damages for a federal constitutional tort is personal, so each defendant's conduct must be independently assessed." *Wilson v. Northcutt*, 441 F.3d 586, 591 (8th Cir. 2006). "Government officials are personally liable only for their own misconduct." *S.M.*, 808 F.3d at 340.

A. DEFENDANT OFFICERS RICHARD AND FOWLKES ARE ENTITLED TO QUALIFIED IMMUNITY ON PLAINTIFF DERRICK JONES' CLAIM AGAINST THEM FOR EXCESSIVE FORCE (COUNT I).

Pretrial detainee § 1983 claims are not analyzed under the Eighth Amendment, but instead are analyzed under the Fourteenth Amendment's Due Process Clause. *Kahle*, 477 F.3d at 550, citing *Owens v. Scott County Jail,* 328 F.3d 1026, 1027 (8th Cir.2003). This makes little difference as a practical matter, though: Pretrial detainees are entitled to the same protection under the Fourteenth

Amendment as imprisoned convicts receive under the Eighth Amendment. *Id.*, citing *Butler v. Fletcher,* 465 F.3d 340, 345 (8th Cir. 2006).

"In an Eighth Amendment excessive force case, 'the core judicial inquiry is whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Smith v. Conway Cty., Ark.*, 759 F.3d 853, 858 (8th Cir. 2014) (pretrial detainee case), quoting *Santiago v. Blair*, 707 F.3d 984, 990 (8th Cir. 2013). The factors to be considered in determining whether force was used in good faith include "the need for the application of force, the relationship between the need and the amount of force that was used, and the extent of injury inflicted." *Whitley v. Albers*, 475 U.S. 312, 321 (1986). Because use of force is sometimes required in prison settings, guards are liable only if they are completely unjustified in using force, i.e., they are using it maliciously and sadistically. *Ward*, 844 F.3d at 721. "[W]hen an official's intent is an element of the § 1983 claim, as it is in Eighth Amendment excessive force claims, and [ ] the official has made a properly supported motion for summary judgment based on qualified immunity, the plaintiff must identify affirmative evidence from which a jury could find that the plaintiff has carried his or her burden of proving the pertinent motive." *Burns,* 752 F.3d at 1139.

On December 14, 2020 and during the national COVID-19 lockdown, Nurse Kristina Davis issued instructions that Derrick and his cellmate were to isolate in

their cell after a medical interview with each of them revealed that they were exhibiting COVID symptoms. App. 000117-119, 000127; R. Doc. 316, at 2-4, R. Doc. 316-1, at 3. Lt. Richard directed Derrick to enter his cell for purposes of COVID isolation. App. 000117, R. Doc. 316, at 1. Derrick refused this directive and multiple other directives from Lt. Richard. *Id.* Lt. Richard left the housing unit and returned with a cannister of pepper spray. *Id.* Upon returning, Lt. Richard gave multiple further directives, along with Corrections Officer Conrad Eastling (hereinafter "CO Eastling"), for Derrick to enter his cell. App. 000117-18, R. Doc. 316, at 1-2. Derrick refused these directives and began moving around the common area of the housing unit. App. 000129, R. Doc. 316-2. At one point, Derrick crosses the red line into the "officer only" section of the common area near the control podium and behind CO Eastling. *Id.* Lt. Richard calls for additional corrections officers while she continued to try and persuade Derrick to comply. Derrick persistently refused. App. 000117, R. Doc. 316, at 2. Throughout this encounter, Lt. Richard prominently displayed the can of pepper spray and told Derrick she would spray him if he did not comply. App. 000129, R. Doc. 316-2.

Ultimately, Lt. Richard applied one quick burst of pepper spray to Derrick. App. 000129, R. Doc. 316-2. Whereupon Derrick attacked Lt. Richard. *Id.* Multiple corrections officers were needed to subdue Derrick, including Fowlkes who sprayed Derrick while he struggled with officers on the ground. *Id.* After the struggle,

Derrick was handcuffed, and taken to the medical department for decontamination. *Id.* While Derrick was in the medical unit, he continued his violent behavior by kicking the door of his cell and throwing his body against the cell door. Fowlkes asked Derrick to stop, he refused, and Fowlkes sprayed Derrick again. App. 000119-120, 000359; R. Doc. 316, at 3-4, R. Doc. 342-1, at 10. Derrick admits that after he calmed down, he was able to get medical treatment and wash out his eyes. App. 000359-60; R. Doc. 342-1, at 10-11.

Richard is entitled to qualified immunity on these facts as it was not clearly established that Richard's short burst of pepper spray violated Derrick's rights where Derrick persistently refused Richard's directives to get in his cell during an international pandemic where it was suspected Derrick may have COVID and crossed a red line on the floor that demarcated an area for officers only. *Hampton* is instructive on this point. *Hampton v. City of St. Louis*, 4:20 CV 966 CDP, 2022 WL 2643507 (E.D. Mo. July 8, 2022), *aff'd*, 22-3017, 2023 WL 8613842 (8th Cir. Dec. 13, 2023). In *Hampton*, like here, a detainee crossed the "officers only" red line while arguing with a correctional officer. *Id.* at *1. The correctional officer warned the detainee that she would pepper spray him if he did not comply with her commands, *id.*, just as Richard warned Derrick that she would pepper spray him if he did not comply. The detainee in *Hampton* persistently refused commands, and so the correctional officer dispersed a short burst of pepper spray. *Id.* The District Court

held, and the Circuit Court affirmed, that the detainee's refusal to comply with instructions and his entering an officer only zone threatened the correctional officer's safety, and thus, the officer's use of pepper spray was justified. *Id.* at *3. Under strikingly similar facts, this Court should find so here as well. But the safety concerns here go beyond just Richard and other correctional officers. Richard was confronting Derrick because it was thought that he had or was exposed to COVID, which at the time was a global pandemic at its height. Derrick's persistent refusal to go to his cell was a safety concern not only for Richard and other correctional officers, but for all detainees in the housing unit. A short burst of pepper spray to secure that threat was objectively reasonable. *See Wilson v. Williams*, 961 F.3d 829, 850 (6th Cir. 2020) ("All observers of good conscience can agree that the spread of COVID-19 in jails and prisons is an urgent problem.").

The record debunks Derrick's likely rebuttal that Richard provided no warning before pepper spraying him. Derrick's deposition testimony never directly contradicts Richard's testimony that she warned Derrick before dispersing pepper spray. Instead, Derrick incredulously testified that he did not understand he had to comply with Richard's orders, but admits he thought Richard was threatening him. App. 000357; R. Doc. 342-1, at 8. The only plausible and thus permissible inference from Derrick's testimony, in light of video evidence showing Richard holding a pepper spray canister, Richard's testimony that she warned Derrick she would

pepper spray him if he did not go in his cell, Derrick's admission that Richard ordered him to his cell, and Derrick's admission of feeling threatened by Richard, is that Richard provided warnings to Derrick that she would pepper spray him if he did not go into his cell. Even if the Court finds this fact to be controverted, there is no clearly established law which requires a correctional officer to provide a warning before dispersing a small amount of pepper spray on a recalcitrant inmate. *See Jones*, 207 F.3d at 496 (concluding that a limited application of capstun to control a recalcitrant inmate constitutes a "tempered response by prison officials" when compared to other forms of force). Hence, Richard is entitled to qualified immunity.

Similarly, Fowlkes is entitled to qualified immunity where it was not clearly established that Fowlkes' spray of Derrick was unconstitutional, and Derrick has provided no affirmative evidence that Fowlkes was completely unjustified in using force against Derrick. Two separate incidents are alleged against Fowlkes here – one immediately following Derrick's attack on Richard and one at the medical unit a short time thereafter. Defendants will analyze them in turn.

Fowlkes' initial spray of Derrick in the housing dorm was objectively reasonable where video evidence shows that Derrick had just attacked Richard and Derrick was on the ground struggling with multiple correctional officers at the time of the spray. After Richard's spray, the video clearly shows Derrick charging toward Richard, knocking her to the ground, at which time multiple correctional officers

were needed to take Derrick to the ground, and a struggle ensues. App. 000129, R. Doc. 316-2. During the struggle, Fowlkes sprays Derrick. It is undisputed that the spray was short, lasting only one or two seconds. *See* App. 000359; R. Doc. 342-1, at 10. Plaintiff cannot, and will not be able to, point to any authority which would preclude pepper spraying Derrick under such circumstances. *Laney v. City of St. Louis, Missouri*, 56 F.4th 1153, 1156 (8th Cir. 2023) (granting qualified immunity to officer who pepper sprayed the plaintiff with a large can of OC spray after officer saw the plaintiff in physical encounter with another officer). Nor can Plaintiff point to any evidence in the record which would plausibly suggest that Fowlkes' spray of Derrick was malicious or sadistic, and therefore, Fowlkes is entitled to qualified immunity on this use of force.

Fowlkes' spray in the medical unit is equally justified. It is undisputed that Derrick is taken to the medical unit immediately following his attack on Richard. App. 000359-60; R. Doc. 342-1, at 10-11. In the medical unit, Derrick was placed in a cell where he began to bang on the door, used his body to beat against the door, and yelled out the door. App. 000119-120, 000359; R. Doc. 316, at 3-4, R. Doc. 342-1, at 10. He was asked to stop, he refused, and Fowlkes sprayed him. App. 000119-120; R. Doc. 316, at 3-4. It is not clearly established that a spray under such circumstances is a violation of Plaintiff's rights. *See Soto v. Dickey*, 744 F.2d 1260, 1270 (7th Cir. 1984) ("The Supreme Court has never held, nor have we or any other

court of appeals, so far as we can determine, that the use of tear gas or a chemical agent is a per se violation of the Eighth Amendment, whether an inmate is locked in his cell or not.").

Derrick alleges that after the spray, Fowlkes commented "let him marinate," but such statement is not objective evidence of a malicious or sadistic motive behind the spray in the first place. In other words, Fowlkes' reaction to the spray, while demonstrating a lack of decorum, is not reasonably indicative of the motive for the spray itself. Because it is not clearly established that Derrick could not be sprayed under such circumstances, and Plaintiff fails to put forth affirmative evidence which reasonably demonstrates that Fowlkes' spray was malicious, Fowlkes is entitled to qualified immunity on his spray of Derrick in the medical unit.

With respect to Derrick's allegations about the lack of decontamination and lack of clean clothes and shower, Derrick fails to demonstrate evidence that Richard or Fowlkes was personally involved. "Government officials are personally liable only for their own misconduct." *S.M.*, 808 F.3d at 340. Here, the record is entirely silent as to Richard and Fowlkes' role, if any, in Plaintiff's decontamination, or lack thereof. For example, Plaintiff's do not put forth evidence that Derrick asked Fowlkes or Richard for decontamination and they refused, or that Richard and/or Fowlkes instructed medical personnel not to decontaminate Derrick. Plaintiff, instead, alleges generally that a material question of fact exists as to whether

"Defendants" properly decontaminated Derrick. App. 000231, R. Doc. 333, at 34.

And while Derrick's decontamination may have been improperly delayed, Plaintiff

has failed to show that Richard or Fowlkes played any part in that delay. And thus,

Fowlkes is entitled to qualified immunity.

## B. DEFENDANT OFFICER FOWLKES IS ENTITLED TO QUALIFIED IMMUNITY ON PLAINTIFF JEROME JONES' CLAIM AGAINST HIM FOR EXCESSIVE FORCE (COUNT II).

On Plaintiff Jerome Jones' (Jerome) claim against Fowlkes, Defendants

accept as true Jerome's testimony regarding how the spray occurred. Jerome testified

that he was directed two or three time to move from a one-man cell to a two-man

cell and that he refused. App. 000552; R. Doc. 343-3, at 6. Jerome was taken down

to the visiting booth, where Fowlkes asked him whether he was going to comply

with orders to move cells. *Id.* Jerome knew that detainees who refuse directives may

be maced, yet he refused orders and began arguing with Fowlkes about why he

needed to move. *Id.* Folkes sprayed Jerome, and Jerome immediately complied. *Id.*

Notably, this event occurred on February 9, 2021, when just a few days prior

the Justice Center experienced violent riots over several days, wherein detainees

escaped their cells, started fires, broke windows, flooded their cells, and assaulted

correctional officers. App. 000147-151; R. Doc. 316-10, at 1-5. So, the need to

maintain order and discipline during this timeframe was paramount. Under these

volatile circumstances, where Jerome was given multiple opportunities to comply

with orders and persistently refused, reasonable force like that used by Fowlkes was objectively reasonable. *See Soto*, 744 F.2d 1260 ("Orders given must be obeyed. Inmates cannot be permitted to decide which orders they will obey, and when they will obey them. Someone must exercise authority and control. One can quickly reason what would happen in a maximum-security prison without proper discipline.").

Jerome's allegations with respect to being left in the cell for thirty minutes after Fowlkes' spray is excluded from constitutional recognition under the Eighth Amendment. Jerome alleges he was left in the cell for thirty minutes after Fowlkes sprayed him, but it is clearly established that "not every malevolent touch by a prison guard gives rise to a federal cause of action." *Hudson v. McMillian,* 503 U.S. 1, 9 (1992). "The Eighth Amendment's prohibition of cruel and unusual punishment necessarily excludes from constitutional recognition de minimis uses of force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Id.* at 9–10, citing *Whitley,* 475 U.S. at 327. Serious or permanent injury is not required to make out an Eighth Amendment claim. *Berryhill v. Schriro*, 137 F.3d 1073, 1076-77 (8th Cir. 1998), citing *White,* 21 F.3d at 281. Some actual injury must be shown, however, and courts consider the extent of the pain inflicted in order to determine whether a constitutional deprivation has occurred. *Id.* at 1076–77, citing *White,* 21 F.3d at 281. Here, Jerome alleges no permanent injuries, but instead,

alleges discomfort from the spray until he was let out of the cell thirty minutes later. *See Jones*, 207 F.3d at 494 (holding that despite the plaintiff's "elaborate claims of pain," forty-five minutes for effects of pepper spray to clear was *de minimus* injury).

Even if Jerome's injuries are deemed not *de minimis*, here again, there are no facts that Fowlkes was personally involved in depriving Jerome of decontamination to lessen the effects of the spray. Jerome alleges that after he was sprayed he asked someone if he could go to the nurse, but "they didn't let" him go; he also asked to take a shower but "they wouldn't let" him shower. App. 000552-53; R. Doc. 343-3, at 6-7. It is clearly established in § 1983 cases that a defendant is only responsible for his own actions. *S.M.*, 808 F.3d at 340. Because Jerome fails to allege any wrongdoing by Fowlkes regarding his decontamination, or lack thereof, Fowlkes is entitled to qualified immunity on these claims.

## C. DEFENDANT OFFICERS TURNER AND FOWLKES ARE ENTITLED TO QUALIFIED IMMUNITY ON PLAINTIFF DARNELL RUSAN'S CLAIM AGAINST THEM FOR EXCESSIVE FORCE (COUNT III).

Plaintiff Rusan alleges two claims of excessive force- the first against Defendant Turner for an incident turned violent after Rusan persistently refused orders, was briefly pepper sprayed, and then proceeded to attack two female officers; the second against Defendant Fowlkes spraying him after he refused to submit to a strip search.

The incident involving Turner perfectly illustrates the truth that courts recognized long ago- that "[r]unning a prison is an inordinately difficult undertaking," *Turner v. Safley,* 482 U.S. 78, 84–85 (1987), due in large part to the fact that jails "house the most aggressive among us." *Vandevender v. Sass*, 970 F.3d 972, 976 (8th Cir. 2020).

On December 19, 2020, Lt. Turner entered a housing unit in response to Officer Lewis' concern that detainees had been smoking in the unit. App. 000120; R. Doc. 316, at 4. When Turner arrived, she and Officer Lewis began talking about Lewis' concerns. *Id.* Rusan overheard the officers' conversation and became angry. *Id.* Rusan repeatedly interjected himself into Turner and Officer Lewis' conversation. *Id.* At the time, Rusan was sitting at the telephone bank nearest to the officer's podium. *Id.* Turner believed that Rusan was trying to distract her and Officer Lewis from the smoke. *Id.* Turner also believed Rusan to be under the influence of whatever drug had generated the smoke in the housing unit. *Id*. As is evident from the video, Turner and Officer Lewis, both female, are the only correctional officers in the male-only housing unit, and at the time of these events at least six other detainees were freely walking about the unit. App. 000158; R. Doc. 316-13.

Lt. Turner told Rusan to use a telephone farther away. App. 000121; R. Doc. 316, at 5. Rusan continued to argue with Lt. Turner and Officer Lewis and cursed at them, but eventually went to the telephone farther away. Rusan then began threatening Lt. Turner, telling her "what he was going to do to" her. App. 000405; R. Doc. 342-3, at 11. Lt. Turner, in an attempt to deescalate Rusan, began to leave. App. 000121; R. Doc. 316, at 5. At that point Rusan began calling Lt. Turner and Officer Lewis names and continued cursing at them. *Id.* Lt. Turner walked back to Rusan and repeatedly instructed him to "step in" to his cell to be locked down. App. 000158; R. Doc. 316-13. Rusan refused. *Id.* Lt. Turner then dispersed a short burst of pepper spray to Rusan. App. 000158; R. Doc. 316-13. Rusan immediately attacked Lt. Turner with a chair. *Id.* When Officer Lewis came to Lt. Turner's aid and sprayed Rusan as well, Rusan attacked her with a chair also. *Id.* Rusan continued to refuse to lock down. *Id.* Officer Lewis continued to attempt to get Rusan in his cell until Rusan attacked her and knocked her to the ground. *Id.*

Under circumstances where a detainee refuses orders, a limited use of pepper spray, like Turner used here, is objectively reasonable. *Burns v. Eaton* is controlling on this point. 752 F.3d 1136 (8th Cir. 2014). In that case, an inmate refused an officer's directive to "catch the cuffs" and return to his cell, so the officer pepper sprayed him. *Id.* at 1139. Here, similarly, Rusan refused directives and objected profanely with threats of violence when persistently ordered to step into his cell. At

that point, just like the officer in *Burns*, Turner "no longer faced the relatively simple task of cuffing [the plaintiff] and escorting him back to his cell. [The officer] now faced a recalcitrant inmate. [The officer] could not simply leave [the inmate]…where he did not belong. Either [the plaintiff] must be persuaded to comply with the command to return to his cell, or someone must…[] forcibly remove him." In *Burns*, the Court held that the officer's limited use of pepper spray was objectively reasonable when faced with a strikingly similar situation, and this Court should so find here. Finally, Rusan offers no affirmative evidence that Turner's intent in spraying him was malicious or sadistic, nor does the video demonstrate any evidence giving rise to such intent. Thus, Turner is entitled to qualified immunity.

Rusan's claims against Fowlkes also fail. On February 3, 2021, jail staff were conducting a "shake down" of Housing Unit 5 Bravo looking for contraband. App. 000121-22; R. Doc. 316, at 5-6. Rusan was assigned to said housing unit and was temporarily held in a visiting booth during the search. *Id.* While in the visiting booth, a corrections officer gave Rusan a directive to submit to a strip search. *Id.* Rusan removed his clothes, but refused to cooperate with any further directives. *Id.* The corrections officer contacted Lt. Fowlkes and reported Rusan's refusal to cooperate. *Id.* Fowlkes again directed Rusan to comply. *Id.* Rusan again refused. At which point Lt. Fowlkes applied one short burst of pepper spray. Rusan then complied with the directive. *Id.*

Notably, Rusan does not – because he cannot – argue that the strip search was a violation of clearly established law. *See e.g.*, *Jacobson v. McCormick*, 763 F.3d 914, 917 (8th Cir. 2014) (holding strip search of pre-trial detainee did not violate clearly established law). Thus, the sole question is whether, upon Rusan's persistent refusal to be strip searched, Fowlkes' short burst of pepper spray was objectively reasonable. The answer is a resounding yes. *See e.g.*, *Jones*, 207 F.3d at 496 (granting qualified immunity to defendant who sprayed capstun in the face of an inmate who persistently refused orders). Moreover, Rusan cannot, and will not be able to, put forth evidence that objectively demonstrates that Fowlkes' spray of Rusan was malicious. Therefore, Fowlkes is entitled to qualified immunity.

D. DEFENDANT OFFICERS JONES AND WILLS ARE ENTITLED TO QUALIFIED IMMUNITY ON PLAINTIFF MARRELL WITHERS' CLAIM AGAINST THEM FOR EXCESSIVE FORCE (COUNT IV).

On January 6, 2022, Marrell Withers (hereinafter "Withers") was confined in the CJC having been brought there by writ from another institution. App. 000122-23, 000164; R. Doc. 316, at 6-7 & 316-16. During Withers' intake process, medical staff believed Withers was positive for COVID-19, so they directed that Withers go into the isolation unit. App. 000122; R. Doc. 316, at 7. Withers refused and began moving freely about the unit while handcuffed. App. 000164; R. Doc. 316-16. Withers then sits down and begins arguing with a correctional officer in the medical unit and swearing at him. App. 000122; R. Doc. 316, at 6. Withers continues to act

in an agitated and argumentative manner, and then threatens to kick the computer monitor at the officer's podium and throw it against the wall. *Id.*

Medical called for backup. Capt. Wills and Officer Jones came into the unit, and again directed Withers to go into an isolation cell. App. 000164; R. Doc. 316-16. He refused. *Id.* Withers declared he will not go in the cell and told Officer Jones he would have to "spray [him]." *Id.* Capt. Wills directs Withers to enter the cell and again he refuses. *Id.* Officer Jones applies one short burst of pepper spray to Withers. *Id.* Withers declares again he is not going in the cell and repeatedly tells Officer Jones to spray him. *Id.* Officer Jones then applies a second short burst of pepper spray. *Id.* Capt. Wills asks Withers if he will now go in the cell and he again refuses. *Id.* Capt. Wills then directs Officer Jones and other corrections officers to take Withers to the medical unit. *Id.*

In an appeal from a summary-judgment ruling on qualified immunity, this Court typically credits the plaintiff's version of the facts. *McManemy v. Tierney*, 970 F.3d 1034, 1038 (8th Cir. 2020), citing *Scott*, 550 U.S. at 378. In some cases, however, the record so "blatantly contradict[s]" the plaintiff's account that "no reasonable jury could believe it." *Id.* And "in those instances, [courts] do *not* "adopt th[e plaintiff's] version of the facts" in evaluating whether the officers were entitled to summary judgment. *Id.* Here, Withers' argument with the medical staff, his persistent refusal to comply with directives, and his statements to defendants to

"spray me…go ahead spray me" are all on video, and therefore, the Court should not adopt Withers' claims to the contrary.

There is no evidence that Capt. Wills applied any force to Withers, nor does the video show that Capt. Wills used any force against Withers. App. 000164; R. Doc. 316-16. Where, on a claim for excessive force, a plaintiff fails to show that a defendant was personally involved in using force against him, qualified immunity is warranted. *S.M.*, 808 F.3d at 340 ("Government officials are personally liable only for their own misconduct."). Thus, Capt. Wills is entitled to qualified immunity where Plaintiff has failed to show that Capt. Wills personally used any force against him.

Officer Jones is also entitled to qualified immunity under these circumstances where Withers, who was thought to be positive for COVID-19, persistently refused directives to go into his cell, and went so far as to tell officers that he would not go to his cell unless and until officers pepper sprayed him. Here, the video plainly shows that Plaintiff persistently refuses commands to go into his cell, and tells defendants to "spray him." App. 000164; R. Doc. 316-16. An officer is entitled to qualified immunity where, like here, the plaintiff consents to the alleged unconstitutional conduct for which the plaintiff is suing the officers. For example, in *Pearson*, 555 U.S. 223, the plaintiff brought a § 1983 claim against officers for violating his rights under the Fourth Amendment to be free from unreasonable search and seizure.

However, the facts in that case established that the plaintiff had consented to the officers' search. Id. at 228. Because the plaintiff had consented to the officers' search, the Supreme Court granted qualified immunity to the officers. *See id.* at 245. Here, similarly, Withers consents to defendants' spray of him when he tells defendants to "spray me."

But even if Withers did not consent to the force, Plaintiff cannot and will not be able to show that the force under these circumstances was a clear violation of established law, especially where Plaintiff's suspected COVID diagnosis was a threat to everyone in the facility. *See e.g.*, *Swain v. Junior*, 961 F.3d 1276, 1280 (11th Cir. 2020) (noting that COVID-19 "poses particularly acute challenges for the administration of the country's jails and prisons. Because incarcerated inmates are necessarily confined in close quarters, a contagious virus represents a grave health risk to them—and graver still to those who have underlying conditions that render them medically vulnerable. And for their part, prison officials are faced with the unenviable (and often thankless) task of maintaining institutional order and security while simultaneously taking proper care of the individuals in their custody."). Thus, Officer Jones is entitled to qualified immunity.

E. DEFENDANT OFFICER FOWLKES IS ENTITLED TO QUALIFIED IMMUNITY ON PLAINTIFFS DERRICK JONES AND JEROME JONES' CLAIM AGAINST HIM FOR UNLAWFUL CONDITIONS (COUNT IX).

The standard applicable to conditions of confinement claims by pretrial detainees was enunciated in *Bell v. Wolfish,* 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979); *Smith v. Copeland*, 87 F.3d 265, 268 (8th Cir. 1996). The proper inquiry is whether those conditions amount to punishment of the detainee, for, under the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt. *Bell,* 441 U.S. at 535, 99 S.Ct. at 1871–72. However, not every disability imposed during pretrial detention amounts to "punishment" in the constitutional sense. *Id.* at 537, 99 S.Ct. at 1873. Thus, if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to "punishment." *Id.* at 539, 99 S.Ct. at 1874. The Government has legitimate interests that stem from its need to manage the facility in which the individual is detained. *Id.* at 540, 99 S.Ct. at 1874–75. Furthermore, there is a *de minimis* level of imposition with which the Constitution is not concerned. *Id.* at 539 n. 21, 99 S.Ct. at 1874 n. 21.

Fowlkes is entitled to qualified immunity where Plaintiffs Derrick and Jerome fail to show that Fowlkes had any direct personal involvement in the water shut offs they complain of. Notably, Jerome does not mention Fowlkes once as it relates to water shut offs. *See* App. 000548-57; R. Doc. 343-3. Derrick complains that water was intermittently shut off for two to four days in February 2021, and when asked whether he knew why the water was shut off, he responded: "I don't know. It was –

34

something personally that this Lieutenant Fowkles would do I guess to – I guess to try to punish us or something." App. 000363; R. Doc. 342-1, at 14. These are exactly the kind of speculative and conclusory statements which fail to survive summary judgment. *Gregory v. Rogers*, 974 F.2d 1006, 1010 (8th Cir. 1992) (finding that in order to withstand a motion for summary judgment, the nonmoving party must substantiate his allegations with "sufficient probative evidence [that] would permit a finding in [his] favor on more than mere speculation, conjecture, or fantasy."). But-for these conclusory and speculative allegations, Plaintiffs fail to establish facts that Fowlkes was directly involved in any water shut off, much less the shut offs which affected them, and thus, Fowlkes is entitled to qualified immunity. *See Williams v. Delo*, 49 F.3d 442, 446 (8th Cir. 1995) (granting qualified immunity to officers related to the plaintiff's conditions claim where plaintiff failed to provide evidence that defendant officers were personally involved in such conditions).

Even if Fowlkes was involved in the water shut offs, there were legitimate government interests in shutting off the water during the time in question. As referenced above, in February 2021, the Justice Center experienced violent riots over several days, wherein detainees escaped their cells, started fires, broke windows, flooded their cells, and assaulted correctional officers. App. 000147-151; R. Doc. 316-10, at 1-5. Related to the flooding, Jerome described that the housing units were like a "mini Olympic swimming pool" because detainees were "popping sprinklers."

App. 000554; R. Doc. 343-3, at 8. Because of this flooding, it was at times necessary to shut off the water. App. 000776; R. Doc. 343-22, at 6. Because the water shut offs were reasonably related to a legitimate governmental objective, it does not, without more, amount to a constitutional violation, and thus, Fowlkes is entitled to qualified immunity.

Finally, even if this Court were to find that Plaintiffs' testimony is sufficient to establish Fowlkes' personal involvement in the water shut offs that affected them, Fowlkes is still entitled to qualified immunity where the plaintiffs' injuries are *de minimus*. Both Jerome and Derrick fail to describe how, if at all, the water shut offs harmed them. Jerome mentions lasting breathing issues, but attributes those symptoms solely to his being pepper sprayed. Derrick, similarly, does not describe any injuries from the temporary water shut offs he experienced, noting that the shut offs would only occur in 12-hr intervals, and then the water would be turned back on again. Thus, because the Plaintiffs have failed to establish any non-*de minimus* injuries, Fowlkes is entitled to qualified immunity. *Copeland*, 87 F.3d at 268 (where plaintiff's allegations amounted to *de minimis* imposition and thus did not implicate constitutional concerns).

## III. THE DISTRICT COURT ERRED IN DENYING CITY'S MOTION FOR SUMMARY JUDGMENT WHERE THE § 1983 AND ADA CLAIMS ARE INEXTRICABLY INTERTWINED WITH THE QUALIFIED IMMUNITY ANALYSIS, AND PLAINTIFFS FAIL TO OTHERWISE IMPLICATE CITY ON EITHER CLAIM.

This Court has jurisdiction over Plaintiffs' claims against City (Counts VI, VIII & X) because they are inextricably intertwined with the qualified immunity analysis against the individual Defendants. *Muir*, 917 F.3d at 1053; *Roberts*, 723 F.3d at 976 (issue of the city's liability on ADA claim is "inextricably intertwined" with the qualified immunity issues). There is no vicarious liability for claims under § 1983 and the ADA. Without a defendant-officer's underlying violation of a plaintiff's clearly established constitutional rights on a § 1983 claim, or a defendant-officer's violation of a plaintiff's asserted rights under the ADA, the claims against City cannot stand. Here, Plaintiffs fail to show that any defendant-officer violated Plaintiffs' clearly established constitutional rights for purposes of § 1983 liability, and fail to establish that City was deliberately indifferent to any clearly established right under the ADA. And thus, the District Court erred in denying summary judgment to City in Counts VI, VIII and X.

### A. ADA CLAIM

Courts have consistently relied on Title IX cases when applying Title VI (and vice versa), and on both Title IX and Title VI cases when applying Title II of the ADA and the RA (and vice versa). *See, e.g.*, *Cannon v. Univ. of Chi.*, 441 U.S. 677,

694-98 (1979) (holding that a private cause of action is available under Title IX, reasoning that "Title IX was patterned after Title VI" and "when Title IX was enacted, the critical language in Title VI had already been construed [by lower courts] as creating a private remedy"); *Guardians Ass'n v. Civil Serv. Comm'n of the City of New York*, 463 U.S. 582, 594-95 (1983) (plurality opinion) (holding that a private cause of action is available under Title VI, relying on *Cannon*); *Barnes v. Gorman*, 536 U.S. 181, 185 (2002) (holding that a private cause of action is available under the ADA and RA, relying on prior Title VI cases finding a private cause of action). Therefore, what the Supreme Court said in *Gebser* regarding the availability of vicarious liability under Title IX is directly relevant to the availability of vicarious liability under Title II of the ADA. In *Gebser*, the Supreme Court held that a public entity could not be found vicariously liable under Title IX for acts committed by school-district employees in the course of their employment. *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 289-90 (1989). Because vicarious liability is not available under Title IX, vicarious liability is not available in Title II cases. *See Jones v. City of Detroit*, 20 F.4th 1117 (6th Cir. 2021) (holding "vicarious liability does not apply to Title II of the ADA"); *Ingram v. Kubik*, 30 F.4th 1241 (11th Cir. 2022) ("Under Title II, vicarious liability is unavailable."); *Casey v. Cooper*, 4:23 CV 206 JMB, 2024 WL 1856176, at *5 (E.D. Mo. Apr. 29, 2024) ("the Court find that the

Eighth Circuit would follow the Eleventh and Sixth Circuit Courts and hold that vicarious liability is not available in Title II cases.").

In Count VIII, Plaintiffs Withers and Rusan inappropriately bring an ADA claim against City for vicarious liability. Plaintiffs allege that unnamed "Defendants" were aware of Plaintiffs' disabilities from their medical records and when they were told about them by Withers and Rusan, that these same "Defendants" failed to accommodate Withers and Rusan when they knew deploying chemical agents would result in serious harm, that "Defendants" nonetheless "deployed chemical agents against Withers and Rusan without even attempting to reasonably accommodate their disabilities," and thus, because of the actions of these defendant officers, City is on the hook for violating Plaintiffs' rights under the ADA. App. 000088; R. Doc. 131, at 39. That is exactly the kind of vicarious liability Title II prohibits. *Hooper v. City of St. Paul*, 17-CV-3442 (PJS/DTS), 2019 WL 4015443, at *11 (D. Minn. Aug. 26, 2019) ("In sum, this Court concludes that Congress made a deliberate decision not to include 'any agent' language in the definition of 'public entity' in Title II of the ADA [], and that Congress did so because it did not intend that public entities be held vicariously liable under Title II [] for the acts of their employees.").

Plaintiffs can only prevail on their ADA claims by showing City was deliberately indifferent to the rights secured to them by the ADA. *Meagley v. City of*

*Little Rock*, 639 F.3d 384, 389 (8th Cir. 2011). But where a city lacks notice that its actions violate the plaintiff's asserted rights under the ADA, City is not liable. *Roberts*, 723 F.3d at 976 (holding city not liable under the ADA where the plaintiff's rights under the ADA were not clearly established).

Because Plaintiffs' rights under these circumstances were not clearly established under the ADA, City is not liable. Whether or not the ADA applies to jails in use of force incidents like the ones at issue here is an open question. Throughout this litigation, Plaintiffs have failed to support their position that "[e]ssentially everything in a prison or jail is a 'program, service, or activity' as defined by the ADA." App. 000250; R. Doc. 333, at 53. In truth, the holdings regarding ADA accommodations in jails have been relatively narrowed to issues like transportation, showering, and participation in correctional programs. *See e.g.*, *Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998) ("[R]ecreational activities, medical services, and educational and vocational programs" at state prisons are benefits within the meaning of Title II); *Kutrip v. City of St. Louis*, 329 Fed. Appx. 683 (8th Cir. 2009) (right to disabled-accessible shower). But whether or not pretrial detainees are entitled to an accommodation for use of force, what kind of accommodation they are entitled to, the circumstances under which they are entitled to a use of force accommodation, and whether the accommodation is required irrespective of the exigent circumstances that may exist in a jail facility, are all

unsettled questions under ADA law. And therefore, Plaintiffs claim against City for ADA violation fails.

## B. MONELL CLAIMS

"The Supreme Court has set a high bar for establishing municipal liability under § 1983, and demands careful analysis from district courts, to avoid any risk that liability could be imposed under a theory of respondeat superior." *Soltesz v. Rushmore Plaza Civic Ctr.*, 847 F.3d 941, 947 (8th Cir. 2017), citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986). The first inquiry "in any case alleging municipal liability under § 1983 is the question whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989).

A plaintiff seeking to impose liability on a municipality must identify either an official policy or a widespread custom or practice that was the moving force behind the plaintiff's constitutional injury. *Bd. of Cnty. Com'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 403 (1997); *Crawford v. Van Buren County, Ark.*, 678 F.3d 666, 669 (8th Cir. 2012). An official policy represents the decisions of a municipality's legislative body, or of an official who maintains the final authority to establish governmental policy. *Brown*, 520 U.S. at 403; *Ware v. Jackson County, Mo.*, 150 F.3d 873, 880 (8th Cir. 1998). To establish a claim of liability based on "custom," the plaintiff must demonstrate: 1) the existence of a continuing,

widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees; 2) deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and 3) that plaintiff was injured by acts pursuant to the governmental entity's custom i.e., that the custom was the "moving force" behind the constitutional violation. *Johnson v. Douglas Cty. Med. Dep't*, 725 F.3d 825, 828 (8th Cir. 2013). Under the second element, a municipality may not be held liable on the basis of custom unless there is "a pattern of 'persistent and widespread' unconstitutional practices which became so 'permanent and well settled' as to have the effect and force of law." *Jane Doe "A" v. Special School Dist.*, 901 F.2d 642, 646 (8th Cir. 1990); *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978).

In this case, Plaintiffs' *Monell* claims against City rest on two theories-excessive force (Count VI) and water shut offs (Count X), both of which fail. As seen above, Fowlkes is entitled to qualified immunity on Plaintiffs claims against him for unconstitutional conditions related to water shut offs. Absent an underlying constitutional violation on the part of Fowlkes, Plaintiffs' claim for municipal liability necessarily fails. *See McCoy v. City of Monticello*, 411 F.3d 920, 922 (8th Cir. 2005) (holding that, as a general rule, municipal liability does not attach without an underlying constitutional violation). Similarly, Defendants have demonstrated above that they are entitled to qualified immunity on Plaintiffs' claims of excessive

force, and therefore, no *Monell* claim against City can stand. But even if an excessive force claim survives summary judgment against a defendant officer, City is still entitled to summary judgment on this record where Plaintiffs fail to show a policy or custom of unconstitutional force or water shut offs.

Plaintiffs fail to show evidence that any policy maker adopted an unconstitutional official policy with regard to use of force or water shut offs, instead they argue that City does not abide by its own policies regarding the use of OC spray. Unfortunately for Plaintiff, the violation of generally accepted practices, including a jail's own standards, are of no help in showing § 1983 *Monell* liability as courts have repeatedly held that "violations of prison policy or regulations alone are not enough to establish deliberate indifference" under § 1983 law. *Vandevender*, 970 F.3d at 976–78, citing to *Jackson v. Gutzmer*, 866 F.3d 969, 977 (8th Cir. 2017) (corrections policy not constitutionally significant for purposes of evaluating § 1983 claim); *Falls*, 966 F.2d at 380; *Kulkay v. Roy*, 847 F.3d 637, 645 (8th Cir. 2017) ("[S]afety regulations do not establish a standard for Eighth Amendment violations.").

Plaintiffs' claims regarding an unconstitutional custom fare no better. Plaintiff provides no evidence that punitive water shut offs occurred, let alone that they were so widespread and pervasive as to have the effect and force of law. Importantly, as to force, it is a recognized reality that the "use of force is sometimes required in prison settings," and thus, "guards are liable only if they are completely unjustified

in using force, i.e., they are using it maliciously and sadistically." *Ward*, 844 F.3d at 721; *Irving v. Dormire*, 519 F.3d 441, 446 (8th Cir. 2008). Therefore, evidence of use of force in a jail, without more, does not in itself establish *Monell* liability against City. Instead, Plaintiffs must point to a pattern of "unjustified force" that was used "maliciously and sadistically." In addition, a pattern of unconstitutional conduct requires similarity and specificity; "[p]rior indications cannot simply be for any and all 'bad' or unwise acts, but rather must point to the specific violation in question." *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 851 (5th Cir. 2009). A pattern also requires "sufficiently numerous prior incidents," as opposed to "isolated instances." *McConney v. City of Houston,* 863 F.2d 1180, 1184 (5th Cir.1989).

Here, Plaintiffs fail to point the Court to any incidents sufficiently similar and specific to Plaintiffs' circumstances such that those prior incidents could be considered the moving force behind Plaintiffs' treatment. *Andrews v. Fowler*, 98 F.3d 1069, 1074-75 (8th Cir. 1996) ("A city may be subject to § 1983 liability only if it had a policy or custom of failing to act upon *prior similar complaints* of unconstitutional conduct."). Plaintiffs also fail to show sufficient numerosity to establish a pattern of unconstitutional conduct. During discovery, Plaintiffs received reports, video, and other information regarding use of force incidents going as far back as 2014. They admit that of the 1241 use of force reports they received, only 9 (< 1%) of the uses of force were found unjustified. App. 000330; R. Doc. 342, at 76.

Plaintiffs will likely point the court to a multitude of videos which demonstrate the use of pepper spray under widely varying circumstances, but the volume of these incidents must be viewed in light of the jail's population over time. Notably, the average daily population at the City Justice Center was 1569 in 2014, 1328 in 2015, 1450 in 2016, 1421 in 2017, 1309 in 2018, 1105 in 2019, 841 in 2020, 650 in 2021, 539 in 2022, 624 in 2023, and 682 thus far in 2024. City of St. Louis Open Data, Inmate Population Data by Year, https://www.stlouis-mo.gov/data/dashboards/inmates/ (last visited August 22, 2024).[3] So over the last ten years, there have been tens of thousands of detainees housed at City's jail. Of those tens of thousands of detainees, Plaintiffs point to a small percentage of detainees who were pepper sprayed, and they point to even fewer, if any, whose pepper spray was "completely unjustified." *See e.g., Evenstad v. Cty. of Hennepin*, No. 04-1124 (JMR/FLN), 2006 U.S. Dist. LEXIS 104666, at *27 (D. Minn. May 19, 2006) (finding 138 complaints of physical assault by detention center deputies insufficient to show *Monell* liability), citing *Strauss v. City of Chicago*, 760 F.2d 765, 768-69 (7th Cir. 1985); *see also*, *Mahdi v. Bush*, 4:19-CV-00183-SRC, 2019

---

[3] An "appellate court may take judicial notice of a fact for the first time on appeal," *Gustafson v. Cornelius Co.*, 724 F.2d 75, 79 (8th Cir. 1983), and may consider matters of public record. *Carpenters' Pension Fund of Illinois v. Neidorff*, 30 F.4th 777, 795 (8th Cir. 2022), citing *Zean v. Fairview Health Servs.*, 858 F.3d 520, 526 (8th Cir. 2017).

WL 6020907, at *8 (E.D. Mo. Nov. 14, 2019). Hence, Plaintiffs have failed to establish a pattern and practice of unconstitutional conduct so widespread and pervasive as to have the effect and force of law, and summary judgment should be entered for City.

## CONCLUSION

Defendants respectfully request this Court reverse the District Court's denial of summary judgment, find that the individual Defendants are entitled to qualified immunity, and that the claims against City fail in the absence of an underlying constitutional violation and clearly established guideposts available to Defendants at the time of events.

Respectfully submitted,

/s/  Abby Duncan
Abby Duncan, #67766MO
1200 Market Street
City Hall, Room 314
St. Louis, Missouri 63103
Phone: 314-622-3361
Fax: 314-622-4956
DuncanA@stlouis-mo.gov

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

This brief complies with Fed. R. App. P. 32(a)(7)(B) in that it contains 11,106 words. This brief complies with Fed. R. App. P. 32(a)(5) and (6) in that it contains proportionally-spaced typeface using Microsoft Word 2019 in Times New Roman font, size 14. In compliance with 8th Cir. R. 28A(h)(2), I certify that this brief and the addendum have been scanned for viruses and are virus-free.

/s/   Abby Duncan

## CERTIFICATE OF SERVICE

I certify that on August 23, 2024, I electronically filed this brief with the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. I certify that all participants are registered CM/ECF users and that service will be accomplished by that system.

 Date: August 23, 2024

/s/   Abby Duncan