Appeal No. 24-1912

UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT

DERRICK JONES, et al.,
Plaintiffs – Appellees,
v.
CITY OF ST. LOUIS, et al.,
Defendants – Appellants.

Appeal from the United States District Court
Eastern District of Missouri, Eastern Division
Hon. Henry Autrey, United States District Judge

**ADDENDUM TO APPELLANTS' BRIEF**

Contents

District Court Memorandum and Order……………………………………A-001

SHEENA HAMILTON,
CITY COUNSELOR

Abby Duncan, #67766MO
Associate City Counselor
1200 Market Street
City Hall - Room 314
St. Louis, Missouri 63103
Phone: 314-622-3361
Fax: 314-622-4956
DuncanA@stlouis-mo.gov

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **DERRICK JONES, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 4:21CV600 HEA** |
| | ) | |
| **CITY OF ST. LOUIS, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## OPINION, MEMORANDUM AND ORDER

This matter is before the Court on Defendants' Motion for Summary Judgment [Doc. No. 315]. Plaintiffs oppose the motion, and the Court heard argument on the matter on March 28, 2024. For the reasons set forth below, the Motions will be denied.

### Facts and Background

Plaintiff's Third Amended Complaint alleges the following 42 U.S.C. § 1983 claims against the individual defendants in violation of the Fourteenth Amendment: Defendants Sherry Richard and Javan Fowlkes for spraying Plaintiff Derrick Jones with an excessive amount of mace (Count I); Defendant Fowlkes for spraying Plaintiff Jerome Jones with an excessive amount of mace (Count II); Defendants Aihsa Turner, Direll Alexander, Bruce Borders and Fowlkes for spraying Plaintiff Darnell Rusan with an excessive amount of mace (Count III); Defendants Freddie Willis and Douglas Jones for spraying Plaintiff Marrell

Withers with an excessive amount of mace (Count IV); and Defendants Fowlkes and John Doe for conditions of confinement amounting to punishment by shutting off water to Plaintiffs Derrick Jones and Jerome Jones cells (Count IX).

The *Monell* Claims are alleged in Count VI (Excessive Force/Mace) and Count X (Conditions of Confinement/Water Deprivation) against Defendant City of St. Louis.

The remaining counts are against Defendant City of St. Louis for the following: Class Actions claims under § 1983 (Counts V and XI); Class Action claim for violation of the Americans with Disabilities Act (ADA) (Count VII); and Plaintiffs' (Withers and Rusan) claim for damages for ADA violation (Count VIII). Plaintiffs' Motion to Certify Class has been denied.

Plaintiffs' Third Amended Complaint, in pertinent part, alleges the following:

Plaintiffs are all pretrial detainees who allege that while held in the CJC, they were maced without warning or provocation, and for the purpose of inflicting punishment or pain, rather than for security reasons. Plaintiffs also allege that they were deprived of the means or ability to remove the chemical residue for excessive periods of time.

On December 14, 2020, Plaintiff Derrick Jones alleges that he asked to transfer cells because his cellmate was exhibiting symptoms of COVID-19. In response, Defendant Lieutenant Sherry Richards told him he would have to stay in

the cell with an infected cellmate, and shortly after, maced him in the eyes and face without warning. Then, Defendant Richards and seven other officers kicked and punched him in the head and placed him in handcuffs. While he was still restrained on the floor, he was maced by Defendant Fowlkes, and left in a cell to "marinate" in the chemical spray for approximately twenty minutes. After that, medical staff washed out his eyes, but he was taken to solitary and kept for eight days without a shower, even though the chemicals from the macing were still on his skin and clothing, causing pain and discomfort. Plaintiff Derrick Jones alleges that he was not acting aggressively and was not threatening staff safety throughout the encounter.

On February 9, 2021, Plaintiff Jerome Jones alleges that after he refused to move cells, he was handcuffed and placed in a small, mace-filled room for approximately twenty-five minutes while his eyes, face, and body were burning from being soaked in mace. He also alleges that he was denied medical attention, had trouble breathing for weeks due to the incident, and continues to experience respiratory distress that he attributes to the macing. He alleges that he was not physically resisting at any time during the encounter.

Plaintiff Darnell Rusan, who is prone to epileptic seizures, alleges he was maced excessively three times without warning. Two of the macings occurred on December 19, 2020, after CJC staff told him that he had a bad attitude. The third

macing occurred on February 3, 2021 with no warning, and afterwards, he was locked in a mace-filled visiting room for hours while fully nude.

On January 7, 2022, Plaintiff Marrell Withers, who has asthma, alleges he was maced twice after not wanting to be transferred, expressing fear of being exposed to COVID-19. During the macing, he alleges he was in handcuffs and not physically resisting. Afterwards, he was taken to the medical unit, but not given a shower or change of clothes.

Plaintiffs allege in Count Six, a *Monell* claim, that the instances explained above are part of a widespread pattern and practice in the CJC that employees use mace to inflict pain and suffering on detainees without cause or warning, often on detainees who are passive, restrained, or confined.

Plaintiffs also allege a *Monell* claim in Count Ten that Defendant City of St. Louis has unconstitutional policies or customs of depriving inmates of water in the CJC. Plaintiffs allege this practice of depriving detainees of water to their cells occurs for hours or sometimes days at a time in order to punish and harm detainees for infractions such as talking back, banging on cell doors, or having an "attitude" with staff. Plaintiffs allege that they were subjected to regular deprivations of drinking water and water for toilets when there was no valid security justification for doing so. For instance, on February 6, 2021, after a detainee uprising to protest inhumane conditions, CJC employees moved several detainees, including Plaintiff Jerome Jones, to the fifth floor and cut off the water supply to all the cells on that

level. Plaintiffs claim that that the detainees had not intentionally flooded their cells or threatened to do so and were without water to drink or to flush toilets for several days, during which time they were also denied meals or other liquids to drink. Because of the inability to flush, several toilets on that floor overflowed, leaving the floors of the level covered with excrement and urine for at least three days. The water shut-offs led to dehydration, headaches, stress, anxiety, and stomach discomfort. Similar water shut-offs occurred periodically after the February 2021 incident, including in March, April, and May of 2021. Plaintiffs allege that this incident, and similar water shut-offs, were not the result of any equipment failure, plumbing issue, or maintenance related reason, but were done to punish detainees.

Plaintiffs request compensatory damages, costs and attorneys' fees, punitive damages against each of the Individual Defendants in their individual capacities, and further additional relief as this Court may deem just and appropriate.

Plaintiffs also pray this Court enter judgment in their favor against the City of St. Louis and enter an order against Defendant City of St. Louis, prohibiting the unconstitutional use of chemical agents and practice of water shut-offs and deprivation as punishment going forward, and for such further additional relief as this Court may deem just and appropriate.

**Legal Standard**

Summary judgment is proper if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(a). The movant bears the initial responsibility of informing the Court of the basis for the motion and must identify those portions of the record which the movant believes demonstrate the absence of a genuine issue of material fact. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). If the movant does so, the nonmovant must respond by submitting evidentiary materials that set out specific facts showing that there is a genuine issue for trial. *Id*.

On a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts. *Id*. Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the evidence are jury functions, not those of a judge. *Id*. But the nonmovant must do more than simply show that there is some metaphysical doubt as to the material facts. *Id*. In order to show that disputed facts are material, the party opposing summary judgment must cite to the relevant substantive law in identifying facts that might affect the outcome of the suit. *Quinn v. St. Louis Cty*., 653 F.3d 745, 751 (8th Cir. 2011). The mere existence of a scintilla of evidence in support of the nonmovant's position will be insufficient; there must be evidence on which the jury could conceivably find for the nonmovant. *Barber v. C1 Truck Driver Training, LLC*, 656 F.3d 782, 791-92 (8th

Cir. 2011). Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *Torgerson*, 643 F.3d at 1042.

## Discussion

### Qualified Immunity

The Due Process Clause protects pretrial detainees from the use of excessive force amounting to punishment. *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015); *See also, Bell v. Wolfish*, 441 U.S. 520, 535 (1979) (stating that "under the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law"); and *Smith v. Conway Cty., Ark.*, 759 F.3d 853, 858 (8th Cir. 2014) (stating that "the Due Process Clause prohibits any punishment of a pretrial detainee, be that punishment cruel-and-unusual or not").

Analysis of excessive force claims under the Due Process Clause focuses on whether the defendant's purpose in using force was "to injure, punish, or discipline the detainee." *Edwards v. Byrd*, 750 F.3d 728, 732 (8th Cir. 2014). The Fourteenth Amendment gives state pretrial detainees "rights which are at least as great as the Eighth Amendment protections available to a convicted prisoner." *Walton v. Dawson*, 752 F.3d 1109, 1117 (8th Cir. 2014). Indeed, pretrial detainees are afforded greater protection than convicted inmates in the sense that the Due Process Clause prohibits the detainee from being punished. *Id.*

"Qualified immunity shields government officials from liability in a § 1983 action unless their conduct violates a clearly established right of which a reasonable official would have known." *Burnikel v. Fong*, 886 F.3d 706, 709 (8th Cir. 2018) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). To determine whether an official is entitled to qualified immunity, the Court asks: "(1) whether the facts shown by the plaintiff make out a violation of a constitutional or statutory right, and (2) whether the right at issue was clearly established at the time of the defendant's alleged misconduct." *Morgan v. Robinson*, 920 F.3d 521, 523 (8th Cir. 2019) (en banc) (quoting *Nord v. Walsh Cnty*., 757 F.3d 734, 738 (8th Cir. 2014)). "The defendants are entitled to qualified immunity unless the answer to both of these questions is yes." *McCaster v. Clausen*, 684 F.3d 740, 746 (8th Cir. 2012).

To state an excessive force claim, the plaintiff "must show only that the force purposely or knowingly used against him was objectively unreasonable." *Kingsley*, 576 U.S. at 396-97. Whether a use of force is objectively reasonable "turns on the facts and circumstances of each particular case." Id. at 397 (quoting *Graham*, 490 U.S. at 396); *Johnson v. Carroll*, 658 F.3d 819, 826 (8th Cir. 2011) (In reviewing whether the use of force was reasonable, "careful attention" is given "to the facts and circumstances of each particular case.") The degree of injury suffered in an excessive force case "is certainly relevant insofar as it tends to show the amount and type of force used." *Johnson*, 658 F.3d at 826 (quoting *Chambers*

*v. Pennycook*, 641 F.3d 898, 906 (8th Cir. 2011)). Because "[o]fficers facing disturbances 'are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving' "—the Court has stressed the need to view the use of force "from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." *Id.* at 399 (quoting *Graham*, 490 U.S. at 397). Relevant factors in evaluating the reasonableness of the use of force include: (1) "the relationship between the need for the use of force and the amount of force used," (2) "the extent of the plaintiff's injury," (3) "any effort made by the officer to temper or to limit the amount of force used," (4) "the severity of the security problem at issue," (5) "the threat reasonably perceived by the officer," and (6) "whether the plaintiff was actively resisting." *Id.* at 397 (citing Graham, 490 U.S. at 396).

Applying these factors to the facts of the case, the Court finds that a fact finder could conclude that Defendants' use of force was objectively unreasonable.

Drawing all reasonable inferences in favor of Plaintiffs, there are genuine disputes as to whether the use of mace and deprivation of water were objectively reasonable. For example, Plaintiffs present evidence that the amount of mace was excessive, that Plaintiffs were not in positions to harm the officers, plaintiffs were left with mace-soaked clothes, plaintiffs were not allowed to shower or rinse their eyes, no action was taken to assist the Plaintiffs when they told the officers they

needed help. Whether these facts rendered the use and amount of mace objectively reasonable under the circumstances is a question for the jury.

Defendants argue they are entitled to qualified immunity in that no constitutional violations occurred since their actions were acceptable *vis a vis* what Plaintiffs did to prompt the use of force. Defendants' focus, however, falls short of the relevant inquiry. Plaintiffs do not contend the use of *any* force is a constitutional violation. Rather, Plaintiffs produce sufficient evidence to overcome the challenge based on the particular instances of the amount of force necessary to curtail any disciplinary or safety concern. Plaintiffs contend Defendants went too far in the use of force. The question of whether the force used in these circumstances was excessive gives rise to factual questions regarding whether a reasonable officer in the situation would have used the amount of force used by Defendants.

Furthermore, Defendants' argument that any injury was *de minimus* does not entitle Defendants to summary judgment. The Eighth Circuit has repeatedly found that excessive macing can be objectively unreasonable even when only *de minimus* injury occurred. "Even when officers are justified in using some force, they violate [the] suspects' Fourth Amendment rights if they use unreasonable amounts of force." *Tatum v. Robinson*, 858 F.3d 544, 550 (8th Cir. 2017) (finding use of pepper spray unreasonable, even when Plaintiff was actively arguing with officer when he deployed the pepper spray, because a reasonable officer would not have

viewed Plaintiff as an immediate threat); *See also*, *Treats v. Morgan*, 308 F.3d 868, 872-73 (8th Cir. 2002) (holding use of pepper spray in response to a non-recalcitrant incarcerated person constitutes an excessive use of force, whether or not the macing caused only *de minimus* injury); *Bauer v. Norris*, 713 F.2d 408, 42 (8th Cir. 1983) ("The use of force by officers simply because a suspect is argumentative, contentious, or vituperative is not to be condoned."); and, *Krout v. Goemmer*, 83 F.3d 557, 566 (8th Cir. 2009) ("The use of . . . gratuitous force against a suspect who is handcuffed, not resisting, and fully subdued is objectively unreasonable.").

**Monel Liability**

Defendants seek summary judgment on Plaintiffs' *Monell* claims alleging the City has unconstitutional policies or customs of depriving inmates of water in the St. Louis City Justice Center and spraying excessive mace on compliant inmates without warning. Defendants argue Counts Six and Ten should be dismissed because Plaintiffs have failed to show the existence of a widespread custom or policy condoning use of excessive force or deprivation of water and inhumane housing conditions.

To establish a Monell claim, the plaintiff's harm must result from a constitutional violation committed by a municipality's employee. *Golberg v. Hennepin Cnty*., 417 F.3d 808, 813 (8th Cir. 2005); *Collins v. City of Harker Heights*, 503 U.S. 115, 120 (1992). The constitutional violation must be caused by

an official municipal policy, an unofficial custom, or a deliberately indifferent failure to train or supervise. *Mettler v. Whitledge*, 165 F.3d 1197, 1204 (8th Cir 199). Municipalities can be held liable under Section 1983 for the violation of constitutional rights if the violation results from a governmental custom, even if the custom was not formally approved. *Monell*, 436 U.S. at 690-91. *Monell* liability requires (1) a continuing, widespread, persistent pattern of unconstitutional misconduct by municipal employees, (2) deliberate indifference or tacit authorization of such conduct by the municipality's policymakers after notice of the misconduct, and (3) an injury caused by acts pursuant to the municipality's custom. *Ware v. Jackson Cnty.*, 150 F.3d 873, 880 (8th Cir. 1990).

Here, Plaintiffs allege that the City had policies or customs of depriving inmates of water in the St. Louis City Justice Center and spraying excessive mace on compliant inmates without warning.

Plaintiffs present evidence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the officers in deliberately violating the constitutional rights of pretrial detainees. Plaintiffs argue that City Defendants had notice of this pattern and practice of constitutional violations but failed to take appropriate corrective actions, thus exhibiting deliberate indifference. While the Court agrees with Defendant that not all use of force is excessive, and that the Use of Force reports do not alone establish an unconstitutional policy or custom, Plaintiff have presented evidence of the use of large amounts of mace being

sprayed on compliant plaintiffs and instances of the water being shut off for long periods of time. Plaintiffs have attested to same, as well as presenting videos which do not necessarily show that Defendants' use of force was not excessive considering the totality of the surrounding circumstances.

When viewing the evidence in the light most favorable to Plaintiffs, the Court concludes that there are genuine disputes of material fact with respect to *Monell* liability and summary judgment, therefore, is unwarranted.

**Americans With Disabilities Act Claim**

Defendants argue they are entitled to summary judgment on Plaintiffs' Americans with Disabilities Act ("ADA") because Plaintiffs have not asked for any accommodation relative to a disability. The Court agrees that only known disability triggers the duty to reasonably accommodate. *Hall v. Higgins*, 77 F.4th 1171, 1182 (8th Cir. 2023). Here, however, Plaintiffs claim they asked for accommodations in advising Defendants of their medical condition before being sprayed.

Likewise, Defendants argue even with a disability, Plaintiffs are not at liberty to disregard staff directives or to engage in acts of violence that threaten the safety of staff and detainees. Once again, Defendants' arguments focus on the initial reason why the use of force or shut off of water may have been perceived necessary rather than focusing on Plaintiffs' claims that the amount of mace or

length of time the water was shut off are the salient excessive force claims. The motion for summary judgment will be denied.

## Conclusion

Based upon the foregoing analysis, Defendants' Motion Summary Judgment will be denied.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment [Doc. No. 315] is **DENIED**.

Dated this 31st day of March, 2024.

HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE